UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| GENE VAN ANTWERP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 08-cv-1177 |
| | ) |
| CITY OF PEORIA, ILLINOIS, | ) |
| | ) |
| Defendant. | ) |

## O P I N I O N and O R D E R

Before the Court is the Motion for Summary Judgment filed by Defendant, City of Peoria, Illinois (Doc. 35). The Motion is GRANTED.

### BACKGROUND

Plaintiff's Complaint alleges that he was discriminated against on account of his age and national origin in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §623(a)(1), and Title VII of the Civil Rights Act of 1984, 42 U.S.C. § 2000e-2(a)(1), respectively. Plaintiff further alleges that he was subjected to reverse discrimination.

The following facts are undisputed. Plaintiff is employed by the City of Peoria as a patrol officer and began his employment in 1988 (Defendant's Statement of Undisputed Material Fact (DSUMF) 1). On September 6, 2006, two positions for technicians in the Crime Scene Unit opened and Plaintiff applied for the positions (DSUMF 2, 3). There were nine applicants for the positions but only six applicants were interviewed, including Plaintiff (DSUMF 4, 5). The two officers considered

best qualified for the positions were Officers Paul Tuttle and Tim Wong – Officer Tuttle was selected for the first position (DSUMF 24).[1] The second position was not filled at that time for reasons that the parties dispute.

The second position was subsequently re-posted in 2007 (DSUMF 12). Plaintiff and Officer Wong were the only applicants for the position (DSUMF 22). They were both interviewed for the position (DSUMF 23); Officer Wong was selected in March, 2007.

Neither party has presented the additional relevant facts in a logical or concise manner or in a manner that would aid the Court in determining this matter. A clear understanding of the events giving rise to the Complaint is also hampered by Defendant's inexplicable failure to file a reply brief and Plaintiff's sprinkling of material facts in his argument section instead of in a complete statement of additional material facts. While the Court is loath to do the parties' job for them, a full understanding and resolution of the matter cannot be made without drawing relevant facts from the record. As such, the Court has drawn the following facts from the attachments to the Motion and Response (which are not lengthy).

The original job posting is dated September 6, 2006 and is labeled "Information Bulletin No. 216-06" (hereinafter Bulletin 216-06) (Doc. 35-1, p. 2)[2]. It states that two openings were "anticipated" in the Crime Scene Unit, that one

---

[1] The job posting indicated that one position was to be filled as soon as possible (hereinafter "first position") and that one would be filled on January 7, 2007 (hereinafter "second position").

[2] For ease of reference, citations are to the document number and page number generated by CM/ECF.

would be filled immediately, and that the other would be filled on January 7, 2007 (*Id.*). Bulletin 216-06 noted that Captain Philip Korem, Lieutenant Vince Weiland, Sergeant Randy Pollard, and a "benevolent representative" (who would observe) would be present at the interviews (*Id.* at p. 3). The interviews took place on September 25, 2006 and, on September 28, 2006, Lieutenant Weiland and Sergeant Pollard signed a memorandum directed at Captain Korem indicating their recommendations as to the two positions (Doc. 35-3, p. 17). They recommended that the first position be awarded to Officer Tuttle (*Id.*). There is no dispute that Officer Tuttle was given the position. With respect to the second position, they believed that Officer Wong was most qualified; however, they recommended that the position be given to Plaintiff because Officer Wong was 26 days short of the years-in-service requirement (*Id.*). It is unclear when Plaintiff was offered the second position. However, a memorandum dated September 27, 2006, and labeled "Personnel Order No. 196-06", states that Officer Tuttle and Plaintiff would begin their new assignments on October 1, 2006 and January 7, 2007, respectively (Doc. 1, p. 9). A subsequent memorandum dated November 7, 2006 from Captain Korem to "all personnel" states that Plaintiff would not be transferring to the Crime Scene Unit "as stated previously in Personnel Order 196-06" (Doc. 35-1, p. 4).[3] There is no evidence indicating that the second position was offered to another officer at that time.

---

[3] The parties dispute as to why Plaintiff's transfer was rescinded or why this second position (with a January 7, 2007 start date) was eliminated.

It appears that the second position was re-posted in another "Information Bulletin" numbered 057-07 ("Bulletin 057-07") (Doc. 32-7, p. 1). Interviews (with the same persons listed above) were held on March 13, 2007 (Doc. 32-3). It is undisputed that Officer Wong was awarded that position.

Defendant contends that the second position advertised in September, 2006 was an "anticipated" position because it depended on the promotion of (then) Officer Kenneth Snow, who worked in the Crime Scene Unit, that was itself dependent on the retirement of Sergeant Melvin Little. To support this fact, Defendant points to the deposition of Captain Korem who testified that the second position in the Crime Scene Unit would open when Officer Snow would be promoted to Sergeant when Sergeant Little retired (Philip R. Korem Deposition pp. 21-22). In particular, Captain Korem testified that:

Q. And the second position was indicated on a specific date?

A. Yes.

Q. And why was that?

A. Because we anticipated that that's when the opening would occur in the lab or in the crime scene unit division. That's when it was anticipated.

Q. That would be Sergeant Snow?

A. Yes.

Q. And why did you anticipate the opening was going to occur on Sunday, January 7, 2007, as a result of the actions of Sergeant Snow?

A. Well, in fact, we anticipated that Sergeant Snow would be getting promoted; and if that occurred, then he would be transferred out of the lab, which would have created the second position.

4

Q. You anticipated this in September of 2006?

A. Correct.

Q. And why was that?

A. One of our sergeants at that time, Sergeant Melvin Little, had indicated his intention to retire. He had indicated that – verbally that he was intending to retire on or after his birth date, which I believe is mid-November. If that occurred, at the time of his retirement, there would be an opening; and there was a new sergeants list that had been posted that would have gone into effect in early November. Sergeant Snow would have been promoted off of that.

(Korem Dep. pp. 21-22).

It seems, however, that Sergeant Little retired earlier than anticipated and that, because of requirements in a Collective Bargaining Agreement, Officer Snow was not promoted and the second position in the Crime Scene Unit did not materialize (Korem Dep. pp. 22-25). Therefore, Defendant contends, Plaintiff did not fill the second position as originally posted.

Defendant does not explain why the second position was reposted and the record doesn't provide a clear answer.[4] Nonetheless, the second position was reposted on February 20, 2007 and, pursuant to the Collective Bargaining Agreement, interviews were held again (Korem Dep. 32, 45)). Officer Wong was

---

[4] Sergeant Snow indicated in his deposition that he was temporarily promoted on January 7, 2007 to sergeant (Doc. 35-5, p. 2). A memorandum addressed to Kimberly King, Senior Staff Attorney, from Captain Korem and dated January 16, 2008, states that because the January, 2007 promotion of Sergeant Snow was temporary, his position in the Crime Scene Unit could not be filled at that time (Tr. 33-5, p. 1). It appears, however, that Sergeant Snow was permanently promoted to sergeant on March 5, 2007, a week or so prior to Officer's Wong's start of term (*Id.*).

5

given that position on March 16, 2007 and began the job on April 1, 2007 (Korem Dep. p. 33; Tim Wong Dep. p. 33).

Plaintiff argues, however, that the second position could not have been dependant on the retirement of Sergeant Little because he had not informed anyone in management that he intended to retire (Melvin Little Dep. pp. 5-6). Sergeant Little specifically testified:

> Q. So, again, your answer is that you did not discuss your pending retirement with any management employee at the City of Peoria Police Department prior to October 7, 2006; is that correct?
>
> A. That's Correct.
>
> (Little Dep. p. 6)

However, Sergeant Little went on to testify:

> Q. Had you told any management personnel at the City of Peoria Police Department that you intended to work until November 11, 2006, you know, prior to that time?
>
> A. Nobody in a discussion. I mean, some of the guys that was around, some of my friends I told I was working till November 11th.
>
> Q. But your friends may not have included management employees?
>
> A. Well, I don't remember seeing anybody around when I was talking to the other sergeants.
>
> Q. If I asked you the names of the same five offices, Settingsgaard, Scully, Korem, Snow and Weiland – would it be true that you did not tell any of those individuals in the fall of 2006 or any point in time that you intended to retire on November 11, 2006? Would that be an accurate statement?
>
> A. Yes, it would.
>
> (Little Dep. pp. 7-8).

From this testimony, it is clear that Sergeant Little spoke about his intent to retire with persons in the police department but did not directly speak with any of the persons in management. Plaintiff goes on to argue that because Defendant could not have been aware that Sergeant Little was going to retire, its reasons for not giving Plaintiff the position in the Crime Scene Unit were mere pretext.

Defendant considered the positions in the Crime Scene Unit to be transfers and not promotions. Captain Weiland testified that a promotion involved a change in rank for which an officer had to take either a written or oral test (Vince Weiland Deposition, p. 48). A transfer did not involve a change in rank and meant "going from one division to another division" (Weiland Dep. p. 49). "A promotion brings forth another rank, brings forth more money, more responsibility that was assigned to that position, whereas a transfer, there is no more money but there will be different responsibilities." (Weiland Dep. p. 49). Plaintiff argues, however, that a position in the Crime Scene Unit was materially better because it was considered a "safer" position and involved an increase in overtime pay (Plaintiff's Response to Defendant's Statement of Material Facts ¶35 and 38 (Doc. 33, p. 8)). To support these propositions, Plaintiff refers to Exhibit 1, paragraph 8 to the Complaint. There is no such exhibit attached to the Complaint. Rather, Group Exhibit 1A contains a typed document containing 11 paragraphs that is an attachment to Plaintiff's Charge of Discrimination (Doc. 1, pp. 7-8). In that document, paragraph 8 states that Plaintiff "was advised that 120 hours of overtime were available each and every month in said position to be split among five individuals equaling twenty

7

four (24) months of overtime as an expectation of employment in said job" (Doc. 1, p. 8). To support the contention that the Crime Scene Unit position is less dangerous, Plaintiff points to the deposition of Officer Wong in which he stated that the position could be "conceived" of as being less dangerous and that his wife was "happy" that he was "out of the environment of being a patrol officer and into the environment of investigating crimes after the fact because of the danger factor" (Doc. 33, pp. 8-9). However, Officer Wong went on to testify:

> A. In reality, there isn't really a difference in what you're calling a danger factor. We still go to crime scenes. We go to crime scenes where there are suspects still present, you know. That's not any different than what a patrol officer does, except for the patrol officer typically gets there first.
>
> Q. Well, to be blunt, I'm guessing the chances of being shot at are a little bit higher as a patrol officer than a crime scene technician?
>
> A. I wouldn't say so.
>
> (Wong Dep. p. 40).

The Court has found no other evidence in the record that would show that overtime was guaranteed or other evidence that positions in the Crime Scene Unit were less dangerous than positions in the patrol unit.

Finally, it is undisputed that Plaintiff is of Dutch descent and that he was born in 1956 and that Officer Wong was born in 1977.

## STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

8

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001); *See also Celotex Corp.*, 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." *Bank Leumi Le-Isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of

9

law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## DISCUSSION

Plaintiff alleges that he was discriminated against on account of his age, race, and national origin.

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges age discrimination, "'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" *Reeves v. Sanderson Plumbing Products Inc.,* 530 U.S. 133, 141 (2000) (*quoting Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). In other words, a plaintiff's age must have "'actually played a role in [the employer's decision making] process and had a determinative influence on the outcome.'" *Id.*; *See also Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 200e-2(a)(1).

A plaintiff may prove intentional discrimination, under any of the theories above, directly, through direct or circumstantial evidence, or indirectly through the familiar burden-shifting method enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Antonetti v. Abbott Laboratories*, 563 F.3d 587, 591 (7th Cir. 2009); *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1053 (7th Cir. 2006); *Grimm v. Alro Steel Corporation*, 410 F.3d 383, 385 (7th Cir. 2005). Direct evidence can include admissions from his employer that he was not transferred because of a protected trait or a mosaic of circumstantial evidence that would lead a jury to believe that he was discriminated against because of his age, race, or national origin. *Luks,* 467 F.3d at 1053. In order to proceed under the indirect burden-shifting method, a plaintiff must first make out a *prima facie* case of discrimination. *Id.* A plaintiff must show that he is a member of the protected class, that he was meeting his employer's legitimate expectations, that he suffered an adverse job action, and that similarly situated persons were treated more favorably. *See Hemsworth*, 476 F.3d at 492; *Antonetti*, 563 F.3d at 591. In a reverse discrimination case, instead of the first prong, a plaintiff must "show 'background circumstances' that demonstrate that a particular employer has 'reason or inclination to discriminate invidiously against whites' or evidence that 'there is something 'fishy' about the facts at hand.'" *Phelan v. City of Chicago*, 347 F.3d 679, 984 (7th Cir.

11

2003) (citations omitted); *Farr v. St. Francis Hosp. and Health Centers*, 570 F.3d 829, 833 (7th Cir. 2009).

  Once Plaintiff has established his *prima facie* case, a defendant must produce a legitimate non-discriminatory reason for the employment decision. *Hemsworth*, 476 F.3d at 492; *Antonetti*, 563 F.3d at 591. If the defendant can offer such a reason, the burden then shifts back to the plaintiff to prove the defendant's reason is merely a pretext for discrimination. *Hemsworth*, 476 F.3d at 492; *Antonetti*, 563 F.3d at 591. To show pretext, a plaintiff must do more than show that the defendant's decision was mistaken or foolish, he must show that the defendant did not honestly believe in the reasons offered. *Kodl v. Board of Educ. School Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). That is, a plaintiff must show that defendant's reason was dishonest and that its true reason was based on discriminatory intent. *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010).

  As a threshold matter, it must first be determined whether Plaintiff suffered an adverse job action. Not all employer actions would subject them to liability under either Title VII or the ADEA. *Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007); *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). Categories of materially adverse employment actions include: reduction in pay or benefits, reduction in career prospects, and changes in job conditions that are humiliating or degrading or an "otherwise significantly negative alteration." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1116 (7th

Cir. 2009) (citing *Nichols*, 510 F.3d at 780).  Because Plaintiff alleges that he was not transferred, Plaintiff would have to show that the new position was materially different (and better) than his current position as a patrol officer: after all, if both positions were comparable in terms of pay, duties, career advancement or conditions of employment, there would be nothing to complain of..  Plaintiff argues that the rescission of the second position was adverse because the position offered overtime (additional compensation) and was considered safer (conditions of employment).  To support this proposition, he relies on his Charge of Discrimination in which he states that "he was advised that 120 hours of overtime were available each and every month in said position to be split among five individuals . . . (Doc. 1, p. 8). Defendant has not objected to the hearsay nature of this statement.  In the body of his argument, Plaintiff also refers to an attachment to the Response (*See* Response, fn. 1).  Plaintiff states that this attachment "shows that Wong's actual overtime was 2006: $5,023.34; 2007: $7,163.31; 2008: $7,743.74; thus Van Antwerp is correct [sic]" (*Id.*).  The attachment is six pages of spreadsheets for years 2004 to 2008 and a summary page.  The pages do not identify that they refer to Officer Wong nor is there any explanatory deposition or affidavit concerning the documents.  Defendant has not objected to the spreadsheet either.  Nonetheless, Plaintiff has not included the substance of the spreadsheet in his statement of material facts and it is STRICKEN for failure to comply with Local Rule 7.1(D).  Plaintiff has not indicated nor offered evidence that the overtime offered to Crime Scene Unit members is any more or less than what a patrol officer would be offered.  With respect to the

13

relative safety of the position, Plaintiff also points to Officers Wong's deposition in which he indicated that his wife was "happy" that he was no longer a patrol officer and was investigating crimes "because of the danger factor." Of course, Officer Wong himself stated that "there isn't really a difference in what you're calling a danger factor."

Defendant does not respond to this evidence and therefore waives admissibility. This Court can only conclude, then, that a jury may find that the Crime Scene Unit position offered more overtime and was at least perceived of as "safer" than a patrol officer position. As such, the rescission of the second position could be considered an adverse job action. *See Lewis*, 496 F.3d at 654 (noting that the loss of a potential to earn hours of overtime may be considered an adverse job action).

Defendant first argues that there is no direct evidence of discrimination, either with respect to age, national origin, or race. Defendant next argues that Plaintiff cannot prevail under the burden-shifting method because he cannot show that he suffered an adverse job action because the Crime Scene Unit position is not a promotion (which already has been discussed *supra)*. Defendant goes on to argue that even if Plaintiff could make out a *prima facie* case of discrimination, he cannot show that Defendant's reason for not giving him the position is a pretext for discrimination. Next, Defendant argues that there were no circumstances or anything fishy that would support Plaintiff's reverse discrimination claim. Finally,

Defendant argues that Plaintiff cannot show that it was aware of his national origin or that any person discriminated against him on account of his national origin.

In response, Plaintiff argues that he is not proceeding under the burden-shifting method but rather the direct method (although Plaintiff responds to Defendant's arguments with respect to the factors considered in a burden-shifting analysis). Plaintiff goes on to argue that the second position, while labeled a transfer, was a better position than patrol officer because it provided for overtime and was less dangerous. Plaintiff further argues that because no person in management was aware of Sergeant Little's intent to retire, Defendant's reason for rescinding the job transfer for the second position was merely pretext for discrimination. In order to support his age discrimination claim, Plaintiff argues there is no evidence that Officer Wong was more qualified. With respect to Plaintiff's reverse discrimination claim, Plaintiff argues that the "background circumstance" that supports this claim is that after the interview process, the interviewees were ranked in order of preference in contravention of policy and the wishes of Chief Settingsgaard and Captain Korem. Finally, Plaintiff argues, in relation to his national origin claim, that it matters not that he (and his parents) was born in the United States.

From Plaintiff's arguments, the Court gathers that Plaintiff is alleging that the discrimination occurred when, in November, 2006, Defendant rescinded its September, 2006 offer to transfer Plaintiff to the second position after the first round of interviews. Plaintiff argues that Defendant fabricated the reason why the

second position no longer was available, the early retirement of Sergeant Little, in order to rescind the offer. Plaintiff further alleges that the real reason why the offer of the second position was rescinded was in order to discriminate against Plaintiff on account of his age, his race, and his national origin. Presumably, Plaintiff would go on to argue that Defendant also did not offer him the second position after the second round of interviews because of its intent to discriminate.

Defendant first argues that there is no direct or circumstantial evidence of age, national origin, or race discrimination. Under the direct method, "a plaintiff's claim survives summary judgment if []he can demonstrate 'triable issues as to whether discrimination motivated the adverse employment action.'" *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009). Direct evidence can include an admission by the decision-maker that he is motivated by a prohibited animus. *Id.* There are typically three types of circumstantial evidence:

> 1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Id.* (quoting *Sun v. Bd. of Trustees*, 473 F.3d 799, 812 (7th Cir. 2007)); *Nagle*, 554 F.3d at 1114-1115. The third category, and indeed proving discrimination based on circumstantial evidence, is substantially similar to the indirect burden-shifting method. *Venturelli v. ARC Community Service, Inc.*, 350 F.3d 592, 601 (7th Cir. 2003).

16

Plaintiff has not presented any direct evidence of discrimination: there is no showing that any decision-maker indicated that Plaintiff was not being transferred because of his age, race, or national origin. Plaintiff also has not presented any evidence of suspicious timing, ambiguous statements, discriminatory commentary, or any statistical evidence that would lead a rational trier of fact to find in his favor. Rather, Plaintiff argues that he was qualified for the second position, that the offer was rescinded in order for Officer Wong to get the second position, and that Defendant's reasons for rescinding the offer are a pretext for discrimination.

The evidence does reveal that Plaintiff was qualified for the position, that he was offered the position, that it was rescinded, that the position was given to Officer Wong (who is younger and of a different race). The evidence also reveals that Sergeant Little did not inform management that he intended to retire; although he did speak to other Sergeants of his intent to retire in November, 2006. This evidence does not square with Defendant's position that it offered the second position only because it (i.e. Captain Korem) was verbally informed, in September, 2006, that Sergeant Little would retire (thus making a sergeant spot available for Sergeant Snow and freeing up a position in the Crime Scene Unit). There also is no explanation of why Sergeant Snow was temporarily elevated to Sergeant in January, 2007, thus presumably making the second position again available. A jury could conclude that Defendant intended Officer Wong to fill the second position from the very beginning, that when it discovered that Officer Wong did not fill the time-in-service requirement, that it was compelled to offer the position to Plaintiff.

A jury could also conclude that Defendant rescinded the offer based on a false reason: its stated belief that Sergeant Little retired earlier than anticipated thus preventing the promotion of Sergeant Snow and rendering a position in the Crime Scene Unit unavailable.[5] Finally, a jury could conclude that the second round of interviews was conducted with the express intent to place Officer Wong in the second position (to the detriment of Plaintiff). The next inference a jury would have to make, then, is that Defendant concocted this scheme in order to discriminate against Plaintiff on account of his age, race, and national origin.[6]

It is at this point that Plaintiff's claim fails. "Circumstantial evidence under the direct method [] must allow a jury to infer more than pretext; it must itself show that the decisionmaker acted because of the prohibited animus." *Venturelli*, 350 F.3d at 602; *Stockwell*, 597 F.3d at 901 (stating that to show pretext, a plaintiff must show that a defendant's reasons are dishonest "*and* (2) the employer's true reason was based on a discriminatory intent." (quotation marks and citation omitted; emphasis added)). Plaintiff's argument would have this Court conclude that a jury could reasonably find that just because he was passed over for a transfer

---

[5] That is, a jury would have to conclude that there were always two positions available in the Crime Scene Unit and that Defendant's stated reason for extinguishing one position in 2006 is false.

[6] Of course, a jury could just as easily conclude that Defendant was aware that Sergeant Little would retire because he had mentioned it to other Sergeants who in turn may have mentioned it to management. Such an inference would make Defendant's reason for rescinding the transfer legitimate (or at least not pretextual) and would mandate judgment in favor of Defendant. Alternatively, even if a jury did find that Defendant was lying, it could also find that it wanted Officer Wong to take the second position, not because he was younger and a different race, but because he was better qualified: unlike plaintiff, he was college educated and proficient with computers – factors that Defendant believed were important.

in favor of someone who is younger and Asian, it necessarily means that he was discriminated against on account of his age, race, and national origin. As to national origin, Plaintiff has presented no evidence that *any* decision-maker was aware of his national origin. Logic dictates that if they were not aware that he was of Dutch descent, they cannot discriminate against him on that account. As to Plaintiff's reverse discrimination claim and ADEA claim, there is simply no showing that either Plaintiff's age or his race played any role in the decision to rescind the transfer offer. Both Title VII and the ADEA require an affirmative showing that a prohibited characteristic led to an employment decision that was detrimental to a plaintiff. Plaintiff has not made such a showing and his claims must fail as a matter of law.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant, City of Peoria, Illinois (Doc. 35) is GRANTED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff. Plaintiff nonetheless shall re-file his response by the deadline indicated in this Court's previous Order (Doc. 36).

Entered this 26th day of May, 2010

                          s/ Joe B. McDade
                          JOE BILLY MCDADE
                          Senior United States District Judge